STEPHEN C. PERRY, Admr., *vs.* AUGUSTUS BAILEY, and others.

Cumberland.　　Opinion March 21, 1900.

*Trespass.　Landlord and Tenant.*

The owner of realty cannot maintain trespass quare clausum unless he is in possession at the time of the alleged trespass, for the gist of the action is the injury to the possessory right. Therefore, a landlord out of possession cannot maintain trespass if the tenant is in possession.

A qualification of this rule permits a landlord, while the tenant is in possession, to maintain trespass for permanent injuries to the freehold affecting its value.

*Held;* in this case, that the entry by the defendant was by lawful authority of the tenant, and hence there was no trespass on the part of the defendant.

Trespass ab initio does not lie for an abuse of authority to enter upon land given by a party. It will only lie for the abuse of authority given by the law.

ON EXCEPTIONS BY DEFENDANTS.

This was an action of trespass quare clausum tried by the justice of the Superior Court, for Cumberland county, without the intervention of a jury, at the December Term, 1898, subject to exceptions in matters of law, who signed a bill of exceptions substantially as follows.

The plaintiff is the administrator, with the will annexed, of the estate not already administered of one Charles Deake, late of Portland, deceased; and in his representative capacity, was on the fifth day of August, 1895, and has been since, the owner of what is known as Deake's wharf in the city of Portland.

This wharf extends from Commercial street into the harbor, and lies between Sturdivant's wharf and Dyer's wharf; the three wharves being separated by two docks. Deake's wharf was built prior to the fire of 1866. Soon after that date it was extended, and was constructed upon each side with walls of shore stone, filled in between with earth, and remained in that condition until August 19, 1895, when the injury complained of occurred. It had a railroad track, running from the main line on Commercial street down on the wharf to a shed or bonded warehouse, near the outer end of the

wharf, over which track railroad cars were run, in order to deliver lumber in the shed or warehouse.

At this time, there was upon the lower end of the wharf the shed or warehouse referred to; and at the upper end, near Commercial street, was a retail ice house, an office occupied by S. C. Dyer & Co., and another building occupied by a yacht club. For several years prior to this date, the greater part of the wharf, including the place of the alleged injury, had been leased to S. C. Dyer & Co., of which firm one James E. Marrett was one of the partners. With the exception of the ice business, and the yacht club office, the wharf had been used by the firm of S. C. Dyer & Co., almost exclusively in the shipping and storing of lumber. For twenty-five years before that time, neither the owners nor the lessees had offered to the general public the use of this wharf; nor had the wharf been used, as matter of fact, by the general public for that length of time, but had been used exclusively, with the single exception named, for the storage and shipment of lumber by the lessees, S. C. Dyer & Co.

The lease of S. C. Dyer & Co., which had been in existence for many years, expired during the first part of the year 1895, at which time the lessees notified the plaintiff, that they did not wish to renew the lease on the terms contained in the same, and from that time on, until the 19th of August, when the injury complained of occurred, S. C. Dyer & Co. were occupying the wharf under no arrangement as to the amount of rent. There was some talk about the making of a new lease, but the parties had not agreed upon any terms as to the length of occupancy, or rate of compensation for use and occupation. As matter of fact, when settlement was finally made, the lessees paid ten cents a thousand per month for the storage of such lumber as was put upon the wharf during the period of occupancy subsequent to the expiration of the lease. After the expiration of the lease, and up to the time when the alleged injury occurred, they were tenants at will of the plaintiff.

At the time of the injury complained of, the defendants were owners of the three-masted schooner, called the Julia S. Bailey of which Calvin W. Sprague was captain. She reached Portland on

the fifth of August, 1895, having been towed to this port from Sullivan Falls, Me. While coming out of Sullivan harbor, the schooner met with some mishap, the exact nature of which the testimony does not disclose, and hence was towed from that port to Portland, to be repaired in the dry dock. The vessel was loaded with paving stone; and before she could go into the dry dock it was necessary to discharge her cargo. At first, an arrangement was made with Mr. Fred I. Sturdivant, who had charge of Sturdivant's wharf. The vessel hauled into the dock, and discharged, upon the second day of August, about one hundred tons of paving stone upon that wharf. After having landed so much of his cargo, he moved his vessel to Dyer's wharf, and there discharged about one hundred and fifty tons of stone. He then, owing to the bad berth of the Julia S. Bailey, as he testifies, moved from that wharf to Deake's wharf, where he discharged some two hundred tons or more of stone; and the occupancy of this wharf, for the purpose of discharging a part of his cargo, is the subject of the present litigation.

From the testimony, it appears that Captain Sprague employed one A. K. P. Leighton, a repairer of vessels, to secure permission to discharge a part of his cargo upon Deake's wharf. And Mr. Leighton had an interview with James E. Marrett, one of the partners of S. C. Dyer & Co. Mr. Leighton stated to Mr. Marrett, that the captain of the Julia S. Bailey would like to pile about fifty tons of paving stone on the wharf, indicating the place where he wanted to pile it. He stated to Mr. Marrett that the vessel was in distress; that the cargo must be removed from her in order to have her repaired; that part of the cargo had been discharged on Sturdivant's wharf, and part on Dyer's wharf; and that the remaining fifty tons must be gotten out so that she could be placed on the railway for repairs. Mr. Marrett informed Mr. Leighton, that he had no authority to allow the cargo to be piled on the wharf; and he told him that it would not do to put the vessel in there, because the firm of S. C. Dyer & Co. had a vessel coming, that she was chartered, and was expected in about a week or ten days, and the dock must be clear for her. Mr. Leighton then said

that he only wanted the privilege of leaving the stone there for three or four days, just long enough to repair the vessel on the railway. The result of the interview was, that Mr. Marrett finally told Mr. Leighton, that if he would get the stone away, so that they would not interfere with S. C. Dyer & Co. in any way, and would be sure not to have the vessel there to block their vessel when it arrived,—so far as the firm of S. C. Dyer & Co. were concerned, he might pile them there. After the expiration of the lease, no authority was given at any time to the firm of S. C. Dyer & Co., by the owner of the wharf, to allow the using of the wharf for any purpose.

At this time, the vessel was at Dyer's wharf, across the dock. No arrangement was made between them as to what should be paid for wharfage; nor has anything been paid, or offered to be paid, either to Dyer & Co., or to the plaintiffs. The Julia S. Bailey thereupon moved across the dock to Deake's wharf, and discharged upon said wharf, near the edge of the same, extending some thirty or forty feet more or less up and down said wharf, some two hundred tons of paving blocks. The discharging began on the 7th of August, 1895, and was completed on the 9th. Mr. Marrett left the city on the 9th, and did not return until after the alleged injury to the wharf. The paving stone remained there until the 19th day of August, when, owing to the heavy weight of the same, the side of the wharf where the stone were piled, for some thirty feet, gave way; and the shore stone, of which the wharf was laid up, as well as the paving stones, were thrown into the dock.

The defendants requested the presiding justice to find, as matter of fact, that the wharf in question was a public wharf. He did not find this as a fact one way or the other, but ruled as matter of law, (1) that so far as the facts in this case are concerned, it is immaterial whether Deake's wharf was a public or private wharf.

Upon these facts he further ruled, as matter of law, (2) that, so far as the plaintiff in the case is concerned, the defendants were trespassers, when they discharged the cargo of paving stone on plaintiff's wharf, and must respond in damages for the injury which the plaintiff sustained.

Also, as matter of law, (3) that the measure of damages, is the difference between the value of the wharf before the injury and its value afterwards. And under this rule he assessed damages at the sum of fourteen hundred dollars.

*Henry W. Swasey*, for plaintiff.

At the time of the injury sued for, S. C. Dyer & Co. were tenants at will of the plaintiff. *Franklin Land Co.* v. *Card*, 84 Maine, 532.

Trespass q. c. may be maintained by the owner of land for a permanent injury done to the freehold though the land be in occupation of a tenant at will. *Davis* v. *Nash*, 32 Maine, 411; *Lawry* v. *Lawry*, 88 Maine, 482.

Tenant at will has no interest which he can transfer to another or over which he can exercise any control. *Cooper* v. *Adams*, 6 Cush. 90; *Cunningham* v. *Holton*, 55 Maine, 33.

From the nature of the relation, no agency is implied by law in a tenant at will.

The evidence shows that S. C. Dyer & Co. expressly and unequivocally stated to Mr. Leighton that they had no such agency in fact.

The court made no special findings as to the wharf being a public one, but did rule it to be immaterial, under the facts, whether the wharf was a public or a private wharf. This did not aggrieve the defendants and can do them no injustice. *Braley* v. *Powers*, 92 Maine, 208.

The case shows plainly that whatever was done by defendants on this wharf was done, not under an implied license to use same as a public wharf to which they had made fast in stress of weather, or to which they had gone to take on freight therefrom; and was not under a claim of right to use same as a public wharf on payment of a reasonable wharfage; but was done under and only under a special and limited permission by them obtained at their own solicitation from Mr. Marrett, who had already told them he had no authority to allow them to pile stone on the wharf.

The case finds that "after the expiration of the lease no authority was given at any time to the firm of S. C. Dyer & Co. by the

owner of the wharf, to allow the using of the wharf for any purpose."

Counsel cited: *Deering* v. *Proprietors Long Wharf*, 25 Maine, 51; *State* v. *Wilson*, 42 Maine, 26; *Montgomery* v. *Reed*, 69 Maine, 515; Laws of 1856, c. 215; Charter of city of Portland, 22; *Commonwealth* v. *Alger*, 7 Cush. 53; *Boston* v. *Richardson*, 105 Mass. 351; *Yates* v. *Milwaukee*, 10 Wall. 497; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691; *Hanford* v. *St. Paul, & Duluth R. R. Co.*, 43 Minn. 110; *Shively* v. *Bowlby*, 152 U. S. 1, 19, 20, 37; *St. Anthony Falls W. P. Co.* v. *Water Commrs.*, 168 U. S. 368.

The wharf owner may exclude the public from his wharf. Gould on Waters, 119; *Dutton* v. *Strong*, 1 Black, 23.

*Benjamin Thompson*, for defendant.

Deake's wharf was a public wharf. *Whitman* v. *Brooklyn Gas Light Co.*, 42 N. Y. 384, 390; *Dutton* v. *Strong*, 1 Black, 23; *Compton* v. *Hawkins*, 90 Ala. 411, 414.

The tests: The purposes for which it was built; the use to which it has been applied; the place where built; and nature and character of the structure. *Heaney* v. *Heeney*, 2 Denio, 625; *Swords* v. *Edgar*, 59 N. Y. 28, 31; *Commissioners of Pilots* v. *Clark*, 33 N. Y. 251, 264; *Bolt* v. *Stennett*, 12 East, 531; *Eastman* v. *The Mayor*, 152 N. Y. 468, 474; *Langdon* v. *The Mayor of N. Y.*, 133 N. Y. 628, 634; *Kingsland* v. *Mayor of N. Y.*, 110 N. Y. 569, 575; Private Laws 1879, c. 175; *Deering* v. *Prop. of Long Wharf*, 25 Maine, 51, 65.

If, therefore, Deake's wharf was a public wharf, within the meaning of that term, the schooner Julia S. Bailey had the right at the time, and under the circumstances as they existed here, (that is, when the wharf was unoccupied, and there were no notices prohibiting its use) to haul in and make fast thereto, and to discharge her cargo thereon, without direct permission or the implied consent of the plaintiff or his tenants, S. C. Dyer & Co. The question whether this wharf was a public or a private wharf is not only material to the correct determination of this case, but is

absolutely necessary thus to distinguish between these two classes of wharves in order to settle the rights of the parties before the court. *Kelley* v. *Tilton*, 2 Abbott, N. Y. Appeals, 495.

SITTING: HASKELL, WHITEHOUSE, WISWELL, STROUT, SAVAGE, FOGLER, JJ.

SAVAGE, J. The plaintiff sues in trespass quare clausum for an injury to his wharf. He alleges that the defendants by their agent unloaded two hundred tons of paving stone upon the wharf without any license, permission or authority therefor, and that the wharf was broken down by the weight of the stone. For many years the wharf had been leased to S. C. Dyer & Co. Their lease expired during the first part of the year 1895, "at which time the lessees notified the plaintiff that they did not wish to renew the lease on the terms contained in the same, and from that time on, until the nineteenth day of August when the injury complained of occurred, S. C. Dyer & Co. were occupying the wharf under no arrangement as to the amount of rent." The captain of the vessel containing the paving stone, through one Leighton, applied to Mr. Marrett, one of the firm of Dyer & Co., for permission to pile fifty tons of stone on the wharf in question, and said that he wanted the privilege of leaving the stone there for three or four days. Mr. Marrett told Leighton that he had no authority to allow the cargo to be piled on the wharf, and also that the firm of S. C. Dyer & Co. had a vessel coming in a week or ten days, and the dock must be clear for her. The result of the interview was that Mr. Marrett told Leighton that "if he would get the stone away so that they would not interfere with S. C. Dyer & Co. in any way, and would be sure not to have the vessel there to block their vessel when it arrived, so far as the firm of S. C. Dyer & Co. were concerned, he might pile them there." No arrangement was made as to the amount of wharfage, and none has been paid or offered to be paid. The case shows that "after the expiration of the lease, no authority was given at any time to the firm of S. C. Dyer & Co. by the plaintiff to allow the using of the wharf for any purpose."

Two hundred tons of stone were unloaded from defendants' vessel onto the wharf, August 7, 8 and 9, 1895, and on the nineteenth day of the same month, owing to the heavy weight of the stone, the side of the wharf, where the stone were piled, gave way and the stone of which the wharf was laid up were thrown into the dock.

For this injury, can the plaintiff maintain trespass quare clausum? We think not. Much of the argument of counsel has been directed to the question whether the wharf was public or private, but this question we do not deem it necessary to consider. For the purposes of this decision, we shall assume, as the plaintiff claims, that the wharf was a private one.

The wharf had been leased to Dyer & Co. After the expiration of the term of the lease, they held over. They continued in possession. Under our statute, and under the circumstances of this case, so far as developed, we think they held as tenants at will, unless by the peculiar stipulations in the lease they had acquired superior rights. *Kendall* v. *Moore*, 30 Maine, 327; *Franklin Land, etc., Co.* v. *Card*, 84 Maine, 528. The lease is not made a part of the case, and we know nothing of its contents. Therefore, it is to be presumed that they held simply as tenants at will, and with the usual rights of tenants at will. Dyer & Co. not only were in lawful possession, but inasmuch as no restrictions are shown, it must be presumed that they had a right to make such use of the wharf as is ordinarily incident to a wharf. Though they may have used it as a private wharf, they were not debarred from permitting vessels other than their own to unload there, for such is the purpose for which wharves are usually built. As tenants, they could use it for any lawful purpose. Their permission to unload stone from defendants' vessel was lawful, and the defendants were thereby authorized to unload stone on the wharf. They committed no acts of trespass so far as S. C. Dyer & Co. were concerned. But for all the purposes of the action of trespass, Dyer & Co., the tenants in possession, are to be considered as the owners, and a license so far as they "were concerned" was sufficient authority for unloading the vessel. Taylor on Landlord & Tenant, § 766.

Now, the well known rule is that the owner himself cannot main-

tain trespass quare clausum unless he was in possession at the time of the alleged trespass, for the gist of the action is the injury to the possessory right. *Chadbourne* v. *Straw*, 22 Maine, 450; *Jones* v. *Leeman*, 69 Maine, 489; *Kimball* v. *Hilton*, 92 Maine, 214. Therefore, the landlord out of possession cannot maintain trespass, if the tenant is in possession. *Bartlett* v. *Perkins*, 13 Maine, 87. A qualification of this rule permits a landlord, while a tenant is in possession, to maintain trespass for injuries to the freehold. *Davis* v. *Nash*, 32 Maine, 411; *Lawry* v. *Lawry*, 88 Maine, 482. But this remedy extends only to acts of trespass. We have said that the entry in this case was by lawful authority. It follows that there was no trespass. *Dingley* v. *Buffum*, 57 Maine, 379. If it be said that the defendants in any event were authorized to pile only fifty tons of stone upon the wharf, and that they occasioned the damage by exceeding their authority, the answer is that an abuse of authority to enter upon land, given by a party, does not render a man a trespasser. *Hunnewell* v. *Hobart*, 42 Maine, 565; *Dingley* v. *Buffum*, supra.

The court is, therefore, of the opinion that the ruling of the presiding judge below, that, upon the facts in the case, the defendants were trespassers, was erroneous.

*Exceptions sustained.*